**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Bobby S Lester,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-04698-PHX-KML

**ORDER**

Plaintiff Bobby Lester seeks review of the Social Security Commissioner's final decision denying her disability insurance benefits. Because the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence and is not based on harmful legal error, it is affirmed.

## I. Background

Lester applied for disability insurance benefits in November 2022, alleging disability beginning June 2022. (AR 17.) Her claim was denied initially and on reconsideration. Lester then presented her case to an ALJ who found she was not disabled. (AR 33.) The Appeals Council declined review, making the ALJ's decision the Commissioner's final decision. (AR 1.) Lester then appealed to this court.

## II. Legal Standard

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a

preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. Analysis

Lester argues the ALJ committed two material legal errors in analyzing her claims: (1) improperly evaluating the medical opinions of David Marzulo, Nadine Keer, and Mikhail Bargan; and (2) rejecting Lester's symptom testimony. (Doc. 10 at 11, 18–19.) She seeks a remand for an award of benefits without rehearing or, alternatively, for further administrative proceedings. (Doc. 10 at 25.)

### A. The ALJ's Five-Step Disability Evaluation Process

Under the Social Security Act, a claimant for disability insurance benefits must establish disability before the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if she cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. § 423(d)(1)(A). Whether a claimant is disabled is determined by a five-step sequential process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the claimant must show she was not engaged in substantial gainful activity; at step two, she must show she had a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(i)–(ii). At step three, the claimant must show her impairment or combination of impairments met or medically equaled the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, she is presumed disabled and the analysis ends. *Id.* If not, the ALJ determines the claimant's residual functional capacity—the most she can do despite her limitations—and, at step four, whether that capacity permits her to perform her past

relevant work. *Id.* §§ 404.1520(a)(4)(iv), 404.1545(a)(1). If the claimant cannot perform her past relevant work, the Commissioner must determine at step five whether she can perform other work given her residual functional capacity, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

The ALJ found Lester satisfied her burden at steps one and two: she did not engage in substantial gainful activity during the relevant period and had severe impairments of cervical and lumbar degenerative disc disease, cervical and lumbar radiculopathy, spinal stenosis, carpal tunnel syndrome, migraines, seizure disorder, irritable bowel syndrome, H. pylori, obstructive sleep apnea, chronic pain syndrome, anxiety disorder, post-traumatic stress disorder (PTSD), a history of somatic symptoms disorder, alcohol abuse disorder, bipolar disorder, and obesity. (AR 20.) At step three, the ALJ determined Lester's impairments did not meet or medically equal a listed impairment. (AR 21.) The ALJ then found Lester had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). (AR 24.) In evaluating Lester's residual functional capacity, the ALJ rejected Lester's symptom testimony because it was "not consistent with the medical evidence and other evidence in the record." (AR 25.) The ALJ also found unpersuasive a treating-source statement from Marzulo, but she credited the medical opinions of Keer and Bargan, two state agency nonexamining physicians. (AR 30–32.)

The ALJ concluded at step four that, based on Lester's residual functional capacity, she could have performed the work of a housekeeper/maid, routing clerk, or marker. (AR 33.) The ALJ therefore ruled Lester was not disabled from June 2022 to December 31, 2022—her date last insured.

### B. The ALJ's Evaluation of Medical Opinions

The most important factors in evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is

'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ must "articulate . . . how persuasive" she finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [she] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R. § 404.1520c(b)(2). The ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Here, the ALJ provided sufficient explanations for rejecting Marzulo's treating-source statement on supportability grounds. Any error in evaluating consistency would therefore be harmless. And the ALJ properly assessed the persuasiveness of Keer's and Bargan's opinions.

**1. Marzulo's Treating-Source Statement**[1]

The ALJ discounted a treating-source statement from Marzulo dated March 2025. (AR 32 (citing AR 1561–62, 1606–08).) According to Marzulo, Lester's restrictions referenced in the statement were "in existence as of or before December 29, 2022." (AR 1606.) Those restrictions included chronic migraines, 30 headaches (but without clarification as to whether that was per day, week, or month), nausea, emesis, weight loss, light sensitivity, and trouble with concentration. (AR 1562.) Marzulo recorded Lester's restrictions as "severe," meaning they would cause her to miss more than at least five days per month and be off-task more than 21 percent of an eight-hour work day. (AR 1562.) The form also indicated that Marzulo's conclusions were based on his own notes and time treating Lester, but the prescribed limitations did not "result from objective, clinical, or diagnostic findings which ha[d] been documented" by him or others in Lester's medical records. (AR 1562.)

The ALJ adequately assessed the lack of supportability for Marzulo's treating-source statement. She recognized Marzulo's opinion did not "result from objective, clinical, or diagnostic findings which have been documented . . . in the patient's medical

[1] Although the ALJ purports to discount two treating-source statements, the two cited statements are identical and from the same date. (AR 32 (citing AR 1561–62, 1607–08).)

records." (AR 1562.) In fact, the ALJ noted Marzulo did not clearly support his opinion with any evidence from the relevant period. *Alvarez v. Comm'r of Soc. Sec.*, No. 1:20-CV-01207-SAB, 2022 WL 3108619, at *9 (E.D. Cal. Aug. 4, 2022) ("ALJ may accord less weight to medical opinions that do not relate to the claimant's condition during the relevant disability period."), *aff'd sub nom. Alvarez v. Kijakazi*, No. 22-16497, 2023 WL 7982622 (9th Cir. Nov. 17, 2023); *Jones v. Saul*, 783 F. App'x 754, 755 (9th Cir. 2019). The treating-source statement itself is from March 2025. (AR 1562.) And the earliest record of Marzulo treating Lester is January 2024, which postdates Lester's date last insured by over a year. (Doc. 10 at 14 (citing AR 1543).) Lester argues "it is possible that [she] started treatment with Dr. Marzulo in 2023." (Doc. 10 at 14.) But that unsubstantiated guess is immaterial because the relevant period did not extend to 2023. The ALJ had good reason to doubt Marzulo could reliably speak to Lester's symptom severity during the relevant period without having treated her during or even shortly after that time.

Aside from Marzulo's own indication that his statements applied before Lester's date last insured (AR 1606), the ALJ found no other evidence Marzulo based his opinion on information from the relevant period (AR 32). *Jones*, 783 F. App'x at 755. The ALJ therefore properly found Marzulo's treating-source statement lacking in supportability.[2] And because an ALJ may find an opinion unpersuasive based on either supportability or consistency, *see Allen v. Kijakazi*, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023), any alleged error in evaluating consistency was harmless. The ALJ reasonably discounted Marzulo's treating-source statement.

**2. Keer's and Bargan's Medical Opinions**

Lester also argues the ALJ improperly credited Keer's and Bargan's medical opinions that Lester could do light work. (Doc. 10 at 18.) She contends those physicians did not assess Lester's ability to work based on her migraines. (Doc. 10 at 18.) But they did. (AR 30 (citing AR 181, 194).) The ALJ noted the reports considered Lester's

[2] Lester's citations to precedent about "check-box" forms miss the mark. (Doc. 10 at 12–13.) The ALJ took issue with the lack of evidence tying the form's conclusions to the relevant period, not the way in which the evidence was presented.

"migraines treated with Botox" and Lester's improving pain as a result. (AR 30 (citing AR 181, 194).) The opinions in those reports, the ALJ reasoned, were supported by medical evidence and consistent with other records from the relevant period. (AR 30.) And because the ALJ articulated an explanation as to supportability and consistency, she reasonably credited the physicians' opinions. *Woods*, 32 F.4th at 792.

### C. The ALJ's Evaluation of Lester's Symptom Testimony[3]

When a claimant has presented objective medical evidence of an underlying impairment which could reasonably cause the severity of the symptoms alleged and there is no affirmative evidence of malingering, an ALJ may only reject subjective statements about the severity of symptoms by offering "specific, clear and convincing reasons for doing so." *See Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). Here, the ALJ did not find evidence of malingering, so she could only discredit Lester's symptom testimony for specific, clear and convincing reasons. *Id.*

#### 1. Migraines

Substantial evidence supports the ALJ's finding that Lester's migraine symptoms were not as severe as she alleged during the disability period. The ALJ properly relied on treatment records indicating improvement in pain from Botox injections, with Lester at one point during the disability period saying her pain improved by 50 percent (AR 26 (citing AR 1327, 1332, 1421)). *See Woods-White v. Comm'r of Soc. Sec. Admin.*, No. CV-24-01405-PHX-JAT, 2025 WL 325527, at *11 (D. Ariz. Jan. 29, 2025) (Botox reducing migraine headaches by at least 50–65 percent undermined the claimant's symptom testimony regarding the severity of her migraines even if they "did not fully control her migraines or pain"); *Sanchez v. Comm'r of Soc. Sec. Admin.*, No. CV-21-0155-PHX-DLR (JFM), 2022 WL 4798452, at *7 (D. Ariz. Aug. 26, 2022) (a 50 percent reduction in daily migraines showed migraine symptoms were "well controlled"), *report and recommendation adopted*, 2022 WL 4783758 (D. Ariz. Sept. 30, 2022); *Martinez v.*

[3] Although Lester allegedly suffered many symptoms, she limits the scope of this appeal to her migraines, depression, and anxiety. (Doc. 10 at 2–3 n.2.)

*Comm'r of Soc. Sec. Admin.*, No. CV-21-00498-PHX-DLR, 2022 WL 4078219, at *3 (D. Ariz. Sept. 6, 2022) (30–40 percent improvement in migraines after Botox injections was a "clear and convincing" reason to discount the claimant's symptom testimony regarding his migraines). She further reported "incremental improvement after each treatment." (AR 26 (citing AR 1332).) Even with normal headaches, her condition improved with psychotherapy. (AR 28 (citing AR 1425).)

The ALJ permissibly concluded those improvements enabled Lester to work because her pain was not strikingly severe to begin with. *Thompson v. Colvin*, No. CV-16-00372-PHX-JAT, 2016 WL 6471399, at *6 (D. Ariz. Nov. 2, 2016) (ALJ validly discredited symptom testimony when medical records showed symptoms less severe than claimed). Rating her pain on a scale of one to ten, with ten being the most painful, the highest Lester rated her pain in the visits cited by the ALJ was just a six—and the record indicated the rating was high due to sleeping with a testing device on her head the previous night. (AR 26 (citing AR 1327).) Although Lester testified she went to the emergency room for her migraines in 2022 and 2024 (AR 25 (referring to testimony at AR 47–48)), the ALJ correctly observed the 2022 visit was for flank pain, not migraines (AR 26 (citing AR 1399)). There was otherwise "minimal evidence of emergency room treatment for migraines" during the rest of the relevant period. (AR 26 (citing AR 1399).) As the ALJ found, that Lester visited the emergency room for migraines outside of—but not during—the disability period supports that her migraines were not as severe as she claimed in 2022.

Lester contends the ALJ improperly relied on Lester's pain improvement because even with improved symptoms, Lester could not have worked enough hours to sustain a job. (Doc. 10 at 22.) But as explained already, record evidence of improvement to the degree Lester experienced is a clear and convincing reason to discount her testimony. *Woods-White*, 2025 WL 325527, at *11. Lester does not offer any citations of her own to any record evidence the ALJ should have considered. (Doc. 10 at 21–22.) Substantial evidence therefore supports the ALJ's conclusion.[4]

[4] Although Lester argues the ALJ erred by relying on Lester's recreational activities (Doc. 10 at 21), any error was harmless because the ALJ's reasons above for rejecting her

**2. Depression and Anxiety**

The ALJ also gave clear and convincing reasons to discredit Lester's testimony on her depression and anxiety symptoms. Lester had "minimal mental health treatment" during the relevant period. (AR 29.) Yet from that minimal record, the ALJ found Lester did not have symptoms giving rise to disabling limitations because the record showed Lester could tend to personal care, had intact memory on mental status exams, did not report functional deficits or cognitive skill loss, and was routinely described by providers as calm, pleasant, or cooperative during treatment. (AR 29 (citing, *e.g.*, AR 1315–17, 1318–19, 1431).) Although Lester was at times severely depressed and had an anxious mood, her judgment, "insight, attention[,] and concentration were all intact" and she could still regulate her emotions, control her behavior, and "maintain well-being in a work setting." (AR 23, 26 (citing, *e.g.*, 1315–17, 1318–19, 1431).) Those reasons are clear and convincing, demonstrating Lester still had the capacity to work despite her depression and anxiety.

Lester argues that, far from "minimal mental health treatment," the record shows her symptoms rendered her unable to work during the relevant period. (Doc. 10 at 22–23.) But most of the records cited describe Lester's symptoms outside of the relevant period and do not purport to reflect Lester's condition from then, so they are unpersuasive (Doc. 10 at 22–23). *Lair-Del Rio v. Astrue*, 380 F. App'x 694, 695 (9th Cir. 2010); *Jones*, 783 F. App'x at 755. Lester cites only two records from the relevant period—Thomas Gazda's treatment notes for November and December 2022 encounters. (Doc. 10 at 23 (citing AR 1421–23, 1428–30).) Although the notes detail a range of self-reported mental-health symptoms, Lester never explains why or how those records undermine other records that the ALJ relied on that indicate Lester's ability to work. The ALJ's decision to discredit Lester's depression and anxiety symptom testimony was therefore supported by clear and convincing reasons.

---

testimony were sufficiently clear and convincing. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (holding errors are harmless when "inconsequential to the ultimate nondisability determination") (simplified).

## IV. Conclusion

The ALJ's evaluations of Marzulo's treating-source statement and Keer's and Bargan's medical opinions were supported by substantial evidence, and she permissibly discounted Lester's testimony for specific, clear, and convincing reasons. Though some of the ALJ's rationales may have been flawed, those errors were harmless because they did not affect the ultimate non-disability determination.

Accordingly,

**IT IS ORDERED** affirming the decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 23rd day of November, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**